UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
NAVIGATORS INSURANCE COMPANY,
ENDURANCE AMERICAN INSURANCE COMPANY
d/b/a Sompo International, and HARTFORD FIRE
INSURANCE COMPANY,

        Plaintiffs,

   - against –

M/V MAERSK ESSEN, her engines, tackle, boilers,
etc. *in rem*; JIAMAO INTERNATIONAL SHIP
LEASE COMPANY, LIMITED, MSC
MEDITERRANEAN SHIPPING CO. S.A., and
MAERSK A/S trading as Safmarine, *in personam*.

        Defendants.
-------------------------------------------------------------X

22 Civ.

**COMPLAINT**

Plaintiffs, NAVIGATORS INSURANCE COMPANY, ENDURANCE AMERICAN INSURANCE COMPANY d/b/a Sompo International, and HARTFORD FIRE INSURANCE COMPANY, by and through its attorneys, Law Office of James P. Krauzlis, as and for their Complaint against the Defendants allege as follows:

**JURISDICTION**

1. This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. Jurisdiction is predicated upon 28 U.S.C. §1333 and the jurisdiction clause contained in the ocean carriers' bills of lading mandate that all claims involving shipments to or from the United States be commenced in this district.

**PARTIES**

2. At all material times, NAVIGATORS INSURANCE COMPANY (hereinafter "NAVIGATORS" or "Plaintiffs") was and is a corporation with an office and place of business located at 1 Penn Plaza, 32nd Floor, New York, New York 10119, and is the subrogated underwriter of one or more of the shipments identified in Schedule A attached hereto which were laden on board the M/V MAERSK ESSEN, V051N, as more specifically described below.

3. At all material times, ENDURANCE AMERICAN INSURANCE COMPANY d/b/a Sompo International (hereinafter "ENDURANCE" or "Plaintiffs") was and is a corporation with an office and place of business located at 4 Manhattanville Rd FL 3 Purchase, NY, 10577-2139, and is the subrogated underwriter of one or more of the shipments identified in Schedule A attached hereto which were laden on board the M/V MAERSK ESSEN, V051N, as more specifically described below.

4. At all material times, HARTFORD FIRE INSURANCE COMPANY (hereinafter "HARTFORD" or "Plaintiffs") was and is a corporation with an office and place of business located at 1 Hartford Plaza. Hartford, CT, 06155-0001, and is the subrogated underwriter of one or more of the shipments identified in Schedule A attached hereto which were laden on board the M/V MAERSK ESSEN, V051N, as more specifically described below.

5. At all material times, JIAMAO INTERNATIONAL SHIP LEASE COMPANY, LIMITED, (hereinafter "JPM" or "Defendants") was and is a corporation organized and existing by virtue of the laws of a foreign state with an office and place of business located at 1165 Fremont Court, Elkhart, IN 46516 and was the owner/lessor of the vessel M/V MAERSK ESSEN, which was the carrying vessel of the various shipments set forth and described in Schedule A attached hereto.

6. At all material times, defendant M/V MAERSK ESSEN (hereinafter "the vessel")

is an ocean-going container ship owned and operated by defendants, as more specifically set forth and described in Schedule A attached hereto, that carried containerized cargo, which is the subject matter of this lawsuit, from Asia to the United States and at all relevant times, was and is still doing business within the jurisdiction of this Honorable Court.

7. At all material times, defendant MAERSK A/S trading as Safmarine (hereinafter "MAERSK" or "Defendants") was and is a corporation with an office and place of business located at 180 Park Avenue, Bldg. 105, Florham Park, New Jersey 07932, and was and is acting as a common carrier, and the Technical Manager, Third Party Operator, and ISM Manager of the M/V MAERSK ESSEN and, at all relevant times, was and is still doing business within the jurisdiction of this Honorable Court.

8. At all material times, defendant, MSC MEDITERRANEAN SHIPPING CO. S.A., (hereinafter "MSC" or "Defendants") was and is a corporation organized and existing by virtue of the laws of a foreign state with an office and place of business located at 420 Fifth Avenue, 8th Floor, New York, New York 10018, was and is acting as a common carrier of goods for hire and, at all relevant times, was and is still doing business within the jurisdiction of this Honorable Court.

9. Plaintiffs bring this action on their own behalf and as agents and/or trustees on behalf of and for the interest of all parties who may be or become interested in the said consignments, as their respective interests may ultimately appear, and plaintiffs are entitled to maintain this action.

**RELEVANT FACTS**

10. In or about November and/or December 2020, the cargo shippers noted in Schedule A (hereinafter "cargo shippers") contracted to sell certain products to the consignees also noted in Schedule A, and said consignees agreed to purchase said goods.

11. The said cargo shippers contracted with the NVOCCs noted in Schedule A to arrange transport of said goods to the United States. The NVOCCs, acting as the agent for the noted cargo interests, thereafter contracted with ocean carriers/defendants noted in Schedule A to transport said goods.

12. In or about November and/or December 2020, consignments consisting of the cargoes noted in Schedule A, were laden in the ocean shipping containers noted in Schedule A, said cargoes then being in good order and condition, which were then delivered to the ocean carriers/defendants and/or their agents at the port of loadings noted in Schedule A, in consideration of an agreed upon freight, pursuant to the ocean carriers/defendants' bills of lading numbers noted in the Schedule A, for transportation to the ports of discharge as noted in Schedule A.

13. Upon information and belief, on or about December 21, 2020, the aforementioned containers were loaded on board the M/V MAERSK ESSEN at the port of loading noted in Schedule A, by the ocean carriers/defendants noted in Schedule A and/or their agents.

14. The M/V MAERSK ESSEN thereafter departed the port of shipment noted in Schedule A destined for, inter alia, the U.S. ports of discharge noted in Schedule A.

15. On or about January 16, 2021, and while in transit from China to the U.S. ports of discharge noted in Schedule A, certain container stacks failed, resulting in the loss of numerous containers overboard and physical damage to numerous containers that remained on board.

16. The containers noted in Schedule A, carrying the cargo noted in said Schedule A, were lost overboard and/or damaged during the foregoing event.

17. As a result of the foregoing, the consignees/assureds noted in Schedule A, the owners of the cargoes noted in Schedule A, suffered a loss of their cargoes valued in the amounts noted in Schedule A.

18. At all times relevant hereto, contracts of insurance for property damage and loss were in effect between the noted consignees/assureds and the Plaintiff underwriters, as stated in Schedule A, which provided coverage for, among other things, the loss or damage to the subject consignments as noted in Schedule A.

19. Pursuant to the aforementioned contracts of insurance between the assureds and Plaintiff underwriters as per Schedule A, monies were expended on behalf of the noted assureds to the detriment of the noted Plaintiff underwriters due to the damages and losses sustained to the aforementioned cargoes during this transit.

20. As the Plaintiff underwriters noted in Schedule A have sustained damages as a result of said expenditures, expenditures rightly the responsibility of Defendants, the Plaintiff underwriters in Schedule A have an equitable right of subrogation and are subrogated, to the extent of the expenditures, to the rights of their assureds with respect to any and all claims for damages against the Defendants.

21. By reason of the foregoing, Plaintiff underwriters have sustained losses which will be shown with specificity at trial, no part of which has been paid, although duly demanded, which are presently estimated to be no less than a total in the amount of $1,274,841.31.

**AS AND FOR A FIRST CAUSE OF ACTION- BREACH OF CONTRACT**

22. Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs 1 through 21, inclusive, as if herein set forth at length.

23. Pursuant to the contracts entered into between the parties, Defendants owed a contractual and statutory duty to the Plaintiffs' assureds to load, stow, secure, carry, keep, care for, protect, and deliver Plaintiffs' assureds' cargo in the same good order and condition as at the time said Defendants first accepted custody and control of the goods safely and properly. Defendants also had a contractual and statutory duty to ensure that the services provided for the

shipment were performed with reasonable care and in a non-negligent and workmanlike manner and had a statutory and contractual duty to exercise due diligence in maintaining the seaworthiness of the M/V MAERSK ESSEN.

24. Defendants breached the aforementioned contractual and statutory duties they owed to Plaintiffs' assureds.

25. The losses sustained by Plaintiffs and their assureds were not the result of any act or omission on the part of Plaintiffs, their assureds or the cargo shippers, but, to the contrary, were due solely as the result of the breach of contracts on the part of Defendants and/or their agents and / or the unseaworthiness of the M/V MAERSK ESSEN.

26. As a direct and proximate result of said breaches of contract by the Defendants, the Plaintiffs have suffered damages in the approximate total amount of $1,274,841.31.

27. By reason of the foregoing, Plaintiffs have sustained losses which will be shown with specificity at trial, no part of which has been paid, although duly demanded, which are presently estimated to be no less than $1,274,841.31.

## AS AND FOR A SECOND CAUSE OF ACTION – BREACH OF BAILMENT

28. Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs 1 through 21, inclusive, as if herein set forth at length.

29. At the time of the aforementioned casualty, Defendants, together with the entities they hired to act on their behalf, were acting as bailees of the shipments and in their own capacity, or through their contractors, agents, servants, or sub-bailees, owed statutory duties to the Plaintiffs' assureds to safely and properly carry, keep, care for and deliver the aforementioned shipments in the same good order and condition as at the time said Defendants first received and accepted custody and control of the goods.

30. Defendants breached their duties and obligations as bailees by failing to deliver said

shipments at the intended destinations in the same good order and condition as at the time said Defendants first received and accepted custody and control of the goods.

31. As a direct and proximate result of the breaches of bailment by the Defendants, the Plaintiffs have suffered damages in the approximate total amount of $1,274,841.31.

32. By reason of the foregoing, Plaintiffs have sustained losses which will be shown with specificity at trial, no part of which has been paid, although duly demanded, which are presently estimated to be no less than the total of $1,274,841.31.

### AS AND FOR A THIRD CAUSE OF ACTION - NEGLIGENCE

33. Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs 1 through 21, inclusive, as if herein set forth at length.

34. The Defendants owed a duty to the Plaintiffs' assureds to properly load, stow, secure, carry, keep and care for, protect and deliver the Plaintiffs' assureds' cargoes in the same good order and condition as at the time said Defendants first received and accepted custody and control of the goods.

35. The Defendants breached and were negligent in performing their duties to carry, keep and care for, protect, and deliver the Plaintiffs' assureds' cargo in the same good ore and condition as at the time said Defendants first received and accepted custody and control of the goods, said cargoes having been lost and/or damaged by the Defendants.

36. As a direct and proximate result of the negligent acts of the Defendants, the Plaintiff have suffered damages in the approximate total amount of $1,274,841.31.

37. By reason of the foregoing, the Plaintiffs have sustained losses which will be shown with specificity at trial, no part of which has been paid, although duly demanded, which are presently estimated to be no less than a total of $1,274,841.31.

## AS AND FOR A FOURTH CAUSE OF ACTION - UNSEAWORTHINESS

38. Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs 1 through 21, inclusive, as if herein set forth at length.

39. As the owners, operators, charterers and /or managers of the M/V MAERSK ESSEN, Defendants were responsible for properly manning, maintaining, and repairing the vessel and for otherwise exercising due diligence to ensure that the vessel was seaworthy and fit to carry cargoes that were delivered to and loaded on board the M/V MAERSK ESSEN during winter North Pacific voyages.

40. Prior to, and at all times relevant hereto, the Defendants failed to exercise due diligence to make the M/V MAERSK ESSEN seaworthy. The M/V MAERSK ESSEN was at all relevant times not fit to undertake the service in which she was engaged. The losses suffered by or in connection with Plaintiffs' assureds' cargo were caused in whole or in part by the Defendants' failure to exercise due diligence to make the M/V MAERSK ESSEN seaworthy at the commencement of the voyage.

41. The losses sustained by Plaintiffs' assureds were caused, in whole or in part, by the negligence and fault of Defendants, and /or their agents, representatives and independent contractors for whose acts and omissions they was responsible, including but not limited to their failure to maintain the M/V MAERSK ESSEN in a seaworthy condition.

42. The losses suffered by or in connection with Plaintiffs' assureds' cargo, as well as the subject casualty, resulted from causes within the privity and knowledge of the Defendants, and/or their officers, directors, managers, supervisors, superintendents and/or such persons whose privity and knowledge are imputable to Defendants.

43. As a direct and proximate result of the aforesaid unseaworthiness resulting from Defendants actions, or failure to act, the Plaintiffs have suffered damages in the approximate total

amount of $1,274,841.31.

44. By reason of the foregoing, Plaintiffs have sustained losses which will be shown with specificity at trial, no part of which has been paid, although duly demanded, which are presently estimated to be no less than a total amount of $1,274,841.31.

**WHEREFORE,** Plaintiffs pray:

1. That process in due form of law may issue against Defendants citing them to appear and answer all and singular the matters aforesaid;

2. That judgment may be entered in favor of Plaintiffs against Defendants for the amount of Plaintiffs' damages in the amount of at least $1,274,841.31, together with interests, costs and the disbursements of this action; and

3. That this Court grant to Plaintiffs such other and further relief as may be just and proper.

Dated: New York, New York
      January 14, 2022
      608-03

                            **LAW OFFICE OF JAMES P. KRAUZLIS**
                            Attorney for Plaintiffs

                            _____
                            James P Krauzlis, Esq.
                            Bar Number 4972JPK
                            284 Baylawn Avenue
                            Copiague, New York 11726
                            (516) 819-1232

## **SCHEDULE A**

**SHIPMENT 1:**

ASSURED: Visual Comfort & Co.
SHIPPER: DONGGUAN DENGHUANG HOME FURNISHING CO.,LTD.
UNDERWRITER: Navigators Insurance Co. (50%) and Endeavor American Insurance Company d/b/a Sompo International (50%)
NVOCC: FedEx Trade Networks & Brokerage, Inc.
NVOCC BILL OF LADING: SZS000158214 dated 12/22/2020
OCEAN CARRIER: Mediterranean Shipping Company S.A.
OCEAN CARRIER BILL OF LADING: MEDUC3148821 dated 12/22/2020
CONTAINER NUMBER: DFSU7308560 and INKU6706470
CARGO LADEN IN SAID CONTAINER: 382 cartons and 535 cartons, respectively, of lighting fixtures.
TYPE AND NATURE OF DAMAGE: both containers overboard
AMOUNT OF CLAIM: $683,987.40

**SHIPMENT 2:**

ASSURED: Visual Comfort & Co.
SHIPPER: DONGGUAN SHI BOSHENG LIGHTING CO., LTD.
UNDERWRITER: Navigators Insurance Co. (50%) and Endeavor American Insurance Company d/b/a Sompo International (50%)
NVOCC: FedEx Trade Networks & Brokerage, Inc.
NVOCC BILL OF LADING: SZS000159050 dated 12/22/2020
OCEAN CARRIER: Mediterranean Shipping Company S.A.
OCEAN CARRIER BILL OF LADING: MEDUC31487016 dated 12/22/2020
CONTAINER NUMBER: MSDU8221672
CARGO LADEN IN SAID CONTAINER: 720 cartons of lighting fixtures
TYPE AND NATURE OF DAMAGE: container overboard
AMOUNT OF CLAIM: $364,092.00

**SHIPMENT 3**:

ASSURED:  Visual Comfort & Co.
SHIPPER:   UNION STAR COLLECTION
UNDERWRITER: Navigators Insurance Co. (50%) and Endeavor American Insurance Company d/b/a Sompo International (50%)
NVOCC: FedEx Trade Networks & Brokerage, Inc.
NVOCC BILL OF LADING: SZS000158225 dated 12/22/2020
OCEAN CARRIER:  Mediterranean Shipping Company S.A.
OCEAN CARRIER BILL OF LADING: MEDUC31487016 dated 12/22/2020
CONTAINER NUMBER: MSDU7060423
CARGO LADEN IN SAID CONTAINER: 517 cartons lighting fixtures
TYPE AND NATURE OF DAMAGE: Shortage and Damage
AMOUNT OF CLAIM:  $123,590.00

**SHIPMENT 4**:

ASSURED:  Maurices Incorporated
SHIPPER:   Lucky Laurel Investment Co. Ltd.
UNDERWRITER: Navigators Insurance Co.
NVOCC: APL Logistics (Cambodia) Pte. Ltd. (APL) and Expolanka Freight (Cambodia)Ltd. (EFL)
NVOCC BILL OF LADING:  EFL 24020215818 dated 12/11/2020 and APL PNH304353 dated 12/12/2020
OCEAN CARRIER:  Mediterranean Shipping Company S.A.
OCEAN CARRIER BILL OF LADING: MEDUPP631344 dated 12/13/2020
CONTAINER NUMBER:  MSDU7954778
CARGO LADEN IN SAID CONTAINER:  765 cartons ladies clothing
TYPE AND NATURE OF DAMAGE:  shortage and damage
AMOUNT OF CLAIM:  $23,602.74

**SHIPMENT 5**:

ASSURED:  Whitmore, Inc.
SHIPPER:   Sunny & Living Home Products Co., Limited
UNDERWRITER:  Hartford Fire Insurance Company
NVOCC:  Flexport International, LLC
NVOCC BILL OF LADING: FLXT00000982885A dated 12/28/2020
OCEAN CARRIER:  Mediterranean Shipping Company S.A.
OCEAN CARRIER BILL OF LADING:  MEDUC3622403 dated 12/28/2020
CONTAINER NUMBER:  TCNU8233067
CARGO LADEN IN SAID CONTAINER: 896 cartons shoe racks and closet organizers
TYPE AND NATURE OF DAMAGE:  shortage and damage
AMOUNT OF CLAIM:  $38,316.19

**SHIPMENT 6:**

ASSURED:  Safah International
SHIPPER:  GUL AHMED TEXTILE MILLS LTD.
UNDERWRITER: Navigators Insurance Co.
NVOCC: Combined Freight International
NVOCC BILL OF LADING:CF18469820 dated 11/25/2020
OCEAN CARRIER:  Maersk A/S trading as Safmarine
OCEAN CARRIER BILL OF LADING:  206263894 dated 12/27/2020
CONTAINER NUMBER:  SUDU6897760
CARGO LADEN IN SAID CONTAINER:   894 cartons cotton sheets
TYPE AND NATURE OF DAMAGE: overboard
AMOUNT OF CLAIM:  $41,262.98